EBENEZER WESTBROOK *v.* ALFRED COMSTOCK, HARRIET COMSTOCK, EUPHEMIA WESTBROOK, HENRIETTA M. WESTBROOK *et al.*

Where money was directed to be paid into Court, under a decree, for an infant, and her guardian accepted a deed of lands in lieu thereof, *it was held*, that it was not binding on the infant; and that the guardian had no right to receive the money, much less land in lieu of it.

This Court has general supervisory power over the persons and estates of infants; and, when any part of an infant's estate is in litigation here, it is under the immediate guardianship and protection of the Court; and, where money belonging to an infant is ordered to be paid to the register, neither the guardian *ad litem* nor general guardian of the infant has any right to receive it.

Before this Court will order money to be paid to a guardian, it must be satisfied that he has given sufficient security for the performance of his trust, and that he has not abused it.

A legacy left to a married woman is liable to an attachment issued against her husband; but the attaching creditor must take it subject to her equity, which is to have the whole, or so much as the Court may see fit, set apart to her for her support.

THIS was a hearing on exceptions to a Master's report.

*H. H. Emmons*, in support of the exceptions.

*E. B. Harrington*, contra.

THE CHANCELLOR. The Master reports that Euphemia and her husband have been paid what was going to her under the decree; that the settlement made by com-

plainant with Henrietta and her guardian should not be treated as a payment of her share; and that he is of opinion that no debt is due from Alfred Comstock, the husband of Harriet, to John H. Westbrook, the attaching creditor; and, admitting an indebtedness, to preserve the wife's equity, her share should be paid into Court, as directed by the decree, with leave to the attaching creditor to apply to the Court, to have what is not settled on her applied towards paying his judgment, should he succeed in obtaining one.

The settlement with Henrietta, by giving her a deed or mortgage, it does not clearly appear which, of lands of much less value than her share, and the subsequent confirmation of it by her general guardian, are acts not binding on her, and should in no respect affect her rights under the decree. There are strong badges of fraud attending the settlement. But, aside from this, the guardian had no right to receive the money, which was directed by the decree to be paid into Court, much less take land in lieu of it. This Court has the persons and estates of infants under its special care and protection; and it is sometimes called their general guardian, from its general superintendence over their persons and estates. It may appoint a guardian for an infant who has no guardian, and it may, for good cause, remove a testamentary guardian, or one appointed by a judge of probate. Every guardian, however appointed, is responsible here for his conduct, and may be removed for misbehavior. 1 *J. C. R.* 99; 2 *J. C. R.* 439; 2 *Paige R.* 374; *Wood* v. *Wood,* 5 *Paige R.* 596. It follows, from this general supervisory power of the Court, that when any part of an infant's estate is in litigation here, it is under the immediate guardianship and protection of the Court; and consequently, that, where money belonging to an infant is ordered to be paid to the

register, neither the guardian *ad litem*, nor general guardian of the infant, has any right to receive it. Before the Court will order it to be paid to the general guardian, it must be satisfied he has given sufficient security for the performance of his trust, and that he has not abused that trust. Especially in a case like the present, where he had not applied to the Court to be admitted to defend the suit, and another had been appointed for that purpose.

Harriet's share was liable to the attachment issued against Alfred Comstock, her husband, but the attaching creditor must take it subject to the wife's equity, which attaches to the fund, it being a legacy. This equity is a right to have the whole, or such part of the fund as the Court may think proper in the exercise of a sound discretion, set apart to her for her support. *Kenney* v. *Udall*, 5 *J. C. R.* 464; *Van Epps* v. *Van Deusen*, 4 *Paige R.* 64. After this has been done, the balance, if any, will belong to the attaching creditor, should he succeed in obtaining judgment in the attachment suit, and he may present his petition to have it paid to him on his judgment. To permit complainant to pay the money to the attaching creditor, would be to deprive the wife of her equity, or make it necessary for her to file a bill to prevent its passing into his hands discharged of her equity. The decree requires the money to be paid into Court by complainant, and if, in consequence of the attachment, either he or Harriet must file a bill to protect his or her rights, it is better he should do it to protect himself, than that she should do so, to preserve her equity. If the attaching creditor, after he has obtained judgment, instead of presenting his petition here, should persist in proceeding at law, this Court will restrain him by injunction at the suit of complainant. I hardly think that, however, will be necessary. It is very questionable whether he can recover a judgment against

Comstock; whether Comstock *is*, in fact, owing him any thing. I am inclined, from the evidence, to believe the attachment suit was got up by complainant himself, for the purpose of embarrassing, if not preventing, a sale of his land, by reason of his default to pay the money as required by the decree.

There is no exception to the report in regard to Euphemia's share.

The exceptions must be overruled, and the Master's report confirmed.